## TATE *v.* MULL.

1. The operation of a cotton ginnery so as to force the cottonseed into a seed-house by "air suction," which method causes a great quantity of dust to be expelled through the cracks of the seed-house and into the dwelling-house of an adjacent proprietor, to his great discomfort and injury, is an invasion of his property rights and amounts to a nuisance.
2. If the injury caused to the adjacent property be continuing so as to cause a constantly recurring grievance, injunction is an available remedy.
3. The construction of the ginnery without objection from the adjacent proprietor will not debar such proprietor from complaining of a' nuisance and resultant injury due to the improper operation of the ginnery.

No. 162. August 16, 1917.

Equitable petition. Before Judge Wright. Floyd superior court. January 12, 1917.

Mrs. Leila Tate is the owner of a small cottage occupied by herself, her husband, and their, children. T. H. Mull owns an adjoining tract of land upon which he has constructed a cotton ginnery. Mrs. Tate brought an action against Mull, alleging that

the gasoline engine used in propelling the machinery of the gin created unusual noises, which were very trying to her nerves and health; that the defendant erected a seed-house midway between the ginnery and her house, into which seed-house he forced the seed by air suction, which method caused a great quantity of dust to be forced through the cracks of the seed-house, and the same would settle in her house and on the floors and furniture; that the dust and lint defiled the air, rendering it unhealthy for her to live in her home; and that the operation of the ginnery is a nuisance. The prayer was for damages, and for an injunction against the operation of the ginnery and engine. On the trial the plaintiff submitted proof tending to show, that a short time after she built her home the defendant erected his ginnery; that no objection to its erection was made by her at that time; that the ginhouse is about thirty-five or forty yards from the plaintiff's residence, and the seed-house is half way between the ginnery and the residence; that the seed is forced into the seed-house from the ginnery by means of air suction; that there are cracks between the planks of the seed-house, and through these cracks the dust and lint from the seed are expelled and settle over the floors and window-sills and on the furniture in the plaintiff's house; that the ginnery when in operation makes a great deal of noise, being propelled by a gasoline engine which is continually back-firing and making a noise like the discharge of a shotgun; that when the gin is running it is necessary to close all the doors of the residence and let the windows down, in order to engage in ordinary conversation; that the plaintiff's property was worth $300 before the ginnery was erected, and it is not worth more than a third of that amount since the ginnery was put in operation. After the plaintiff and her husband and two other witnesses had testified to this effect, and while a witness for the plaintiff was upon the stand, he was asked to state the effect of the operation of the cotton-gin upon the residence as affecting its desirability for a home. The court interposed and informed counsel for the plaintiff that the question of an injunction was not in the case, and he would instruct the jury to find against an injunction, because plaintiff had allowed the defendant to construct the ginnery without attempting to prohibit the same, but that he would allow the case to proceed for the recovery of damages. The plaintiff's counsel thereupon renounced all right

to recover damages, and insisted that under the evidence he was entitled to go before the jury on the question as to whether the operation of the ginnery, under circumstances disclosed in the evidence, should be enjoined as amounting to the maintenance of a nuisance. Thereupon the court directed a verdict in favor of the defendant against the plaintiff, denying an injunction.

*Harris & Harris,* for plaintiff.

*McHenry & Porter,* for defendant.

EVANS, P. J. (After stating the foregoing facts.) The Civil Code, § 4457, defines a nuisance as "anything that worketh hurt, inconvenience, or damage to another; and the fact that the act done may otherwise be lawful does not keep it from being a nuisance. The inconvenience complained of must not be fanciful, or such as would affect only one of fastidious taste, but it must be such as would affect an ordinary reasonable man." The operation of a cotton-gin is not per se a nuisance, but it may become so under certain circumstances. A landowner has no right to conduct a lawful business on his own land in such a way as to invade and injure his neighbor's property. The evidence was to the effect that the defendant erected a seed-house near his ginnery and a few yards from the plaintiff's residence, into which seed-house he forced the seed from the ginnery by air suction, which method caused a great quantity of dust to be forced through the cracks of the seed-house and to settle in the plaintiff's home and on the floors and the furniture therein, the effect of which was to depreciate the value of the home by $200. From this evidence the jury would be authorized to find that the defendant was maintaining an actionable nuisance. *Ponder* v. *Quitman Ginnery,* 122 *Ga.* 29 (49 S. E. 746). In order to obtain an injunction against the maintenance of a nuisance, it must appear that by reason of its gravity, permanent character, or both, the plaintiff can not be adequately compensated in damages, or that the injury must be continuing so as to cause a constantly recurring grievance. *Farley* v. *Gate City Gas Light Co.,* 105 *Ga.* 323, 337 (31 S. E. 193). Although the plaintiff waived her right to damages, if the jury should find from the evidence that the manner in which the gin was operated constituted a nuisance, with resultant injury to the plaintiff's property, and the nuisance was a continuing one, the plaintiff would be entitled to an injunction against its continued main-

tenance. The circumstance that the ginnery was constructed in close proximity to the plaintiff's residence, without objection on her part, does not deprive her of her right to bring an action to enjoin the operation of the ginnery in such a way as to make it a nuisance. The doctrine of estoppel does not apply where a land-owner sees his neighbor erect a building to be used in a lawful enterprise, where there is nothing to suggest that the machinery therein employed will be so improperly operated as to injure and damage his property. The plaintiff is not entitled to an injunction against the operation of the ginnery in a proper manner; but if it is made to appear that its operation is in such manner as to amount to a continuing nuisance, she would be entitled to an injunction against the defendant maintaining such nuisance. Faulkenbury v. Wells, 28 Tex. Civ. App. 621 (68 S. W. 327).

*Judgment reversed. All the Justices concur.*